IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Doylan V. Rivers, | Case No. 3:14 CV 2547 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Neil Turner, et al., | |
| Defendants. | |

**INTRODUCTION**

Pro se Plaintiff Doylan Rivers, an Ohio inmate, brings this action under 42 U.S.C. § 1983 against Defendants Neil Turner, FNU Hunt, FNU Shaeffer, Kasey Morris, FNU Joyce, and Norm Hills, all officials at North Central Correctional Institution ("NCCI"), and Debbie Starks, education administrator at NCCI (Doc. 26 at 1). Rivers alleges Defendants: (1) violated his equal protection rights by discriminating against black inmates in job assignments and college-scholarship funding; and (2) retaliated against him for speaking against such discrimination by putting him in administrative segregation (Doc. 26 at ¶¶ 15–33).

Defendants filed a Statement of Position Concerning Exhaustion of Administrative Remedies (Doc. 65), which this Court construed as a Motion for Partial Summary Judgment *Instanter* (Doc. 67). Rivers opposed the Motion (Doc. 68), and Defendants replied (Doc. 70). Defendant Debbie Starks joined the Motion and Reply (Doc. 77). Defendants contend Rivers failed to exhaust administrative

remedies before bringing his constitutional claims, as required by the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). This Court agrees.

## BACKGROUND

In December 2011, Rivers was housed at NCCI and was the prison's NAACP president (Doc. 68-1 at 19). That month, he sent a letter (not a grievance) to the Chief Inspector -- the last stop in Ohio's Inmate Grievance Procedure (Doc. 68-1 at 19). Ohio Admin. Code § 5120-9-31. In that letter, Rivers disclosed his plan to allege NCCI officials discriminated against black inmates in job assignment and college-scholarship funding; he also asked the Chief Inspector for protection against retaliation by NCCI officials (Doc. 68-1 at 19). A month later, the Chief Inspector responded with a form letter, directing Rivers to follow Ohio's Inmate Grievance Procedure (Doc. 65-1 at 24).

Over the next two months, Rivers protested to several NCCI officials -- namely, Warden Turner, Deputy Wardens Hills and Joyce, Institutional Inspector Morris, and Education Administrator Starks -- that NCCI's policies were racially discriminatory (Doc. 68 at ¶ 5).

In March 2012, NCCI officials put Rivers in administrative segregation (Doc. 65-1 at 35). There, Rivers sent another letter (not a grievance) to the Chief Inspector, calling attention to his first letter and imploring the Chief Inspector to protect him (*id.* at 30). A month later, the Chief Inspector responded with a form letter, identical to the first, again directing Rivers to follow Ohio's Inmate Grievance Procedure (*id.* at 34). Rivers remained in segregation -- save for a brief interlude in April (*id.* at 43) -- until December 2012, when NCCI officials transferred him to Allen Oakwood Correctional Institute ("ACI") (Doc. 68 at ¶¶ 6–8).

Shortly after his transfer, Rivers met with ACI's Institutional Inspector, who instructed Rivers on how to follow Ohio's Inmate Grievance Procedure and gave him a form (Doc. 68 at ¶ 16). After

2

that meeting, Rivers filed a one-step grievance against the "NCC[I] Warden" (Doc. 68-1 at 1). In that grievance, Rivers alleged: "[he] was . . . put back in segregation without legal cause on 4/26/12 by . . . Warden Turner . . . in retaliation for using grievance procedure" (*id.* at 1). To explain why the Warden was retaliating against him, Rivers recounted meeting with an unnamed NCCI Institutional Inspector who "acknowledged fact [*sic*] [NCCI] was out of compliance" with non-discrimination policies (*id.*).

Several months later, the Chief Inspector dismissed Rivers' grievance (*id.* at 2). The dismissal began:

> Upon my review and communication with staff at NCCI, I find that you were placed in segregation at NCCI under investigation due to complaints from staff and inmates that you were acting inappropri-ately as NAACP president. I find that you were transferred to ACI on 12/10/2012 due to your disruptive behavior within inmate groups at NCCI.

And concluded: "[Rivers] failed to clearly indicate how Warden Turner was personally and knowingly involved in a violation of law, rule, or policy and approved it or did nothing to prevent it. Accordingly this grievance is DENIED" (*id.*).

## STANDARD OF REVIEW

Summary judgment is appropriate if there is "no genuine dispute as to any material fact," and the moving party "is entitled to judgment as a matter of law." Federal Civil Rule 56(a). When considering a motion for summary judgment, this Court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). It may not weigh the evidence or make credibility judgments. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). But "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury

could reasonably find for the plaintiff." *Expert Masonry, Inc. v. Boone Cty.*, 440 F.3d 336, 341 (6th Cir. 2006) (internal quotation marks omitted).

Non-exhaustion is an affirmative defense under the PLRA, with the burden of proof falling on Defendants. *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011). Therefore, "[s]ummary judgment is appropriate only if [D]efendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Id.* (quoting Federal Civil Rule 56(a)).

## DISCUSSION

### Prison Litigation Reform Act

The PLRA mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 216 (2007).

An inmate exhausts administrative remedies by "taking advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance procedure to permit prison officials to review and, if necessary, correct the grievance 'on the merits.'" *Reed Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford v. Ngo*, 548 U.S. 81, 95 (2006)).

### Ohio's Inmate Grievance Procedure

In Ohio, an inmate must generally follow a three-step grievance procedure, consisting of: (1) an informal complaint; (2) a notification of grievance; and (3) an appeal to the Chief Inspector. Ohio Admin. Code § 5120-9-31(K).

But, when an inmate files a grievance against a warden or an institutional inspector, the inmate must follow an alternative one-step grievance procedure, consisting only of a direct grievance to the Chief Inspector. *Id.* § 5120-9-31(M). To pursue such a one-step grievance, the inamte "must show that the warden or [institutional inspector] was personally and knowingly involved in a violation of law, rule, or policy, or personally and knowingly approved or condoned such a violation." *Id.*

An inmate exhausts administrative remedies when the inmate follows the "critical procedural rules" of Ohio's Inmate Grievance Procedure, and the Chief Inspector decides the inmate's grievance "on the merits." *Reed Bey*, 603 F.3d at 324; *see also Reynolds Bey v. Harris Spicer*, 428 F. App'x 493, 498 (6th Cir. 2011). On the other hand, an inmate fails to exhaust administrative remedies when the Chief Inspector "clearly and expressly" dismisses the inmate's grievance "on procedural grounds." *Reynolds Bey*, 428 F. App'x at 502 (citing *Reed Bey*, 603 F.3d at 325).

**Equal Protection Claim**

Rivers alleges Defendants discriminated against black inmates in job assignments and college-scholarship funding (Doc. 26 at 3). He requests injunctive relief, enjoining Defendants from violating his rights under the Equal Protection Clause (*id.* at 10).

Defendants contend Rivers never grieved the alleged racial discrimination (Doc. 65 at 4). "Failure to file an administrative grievance . . . precludes proper exhaustion and thus bars the claim in federal court." *Woodford*, 548 U.S. at 93. Rivers argues he alleged racial discrimination in his grievance against Warden Turner (Doc. 68 at ¶ 17). Not so. That grievance mentions racial discrimination only to explain what prompted the alleged retaliatory segregation (*see* Doc. 68-1 at 1). Nowhere does Rivers allege Warden Turner, against whom he filed the grievance, personally discriminated on the basis of race (*id.* at 1). And, while he did recount that an unnamed Institutional

5

Inspector allegedly "acknowledged fact [*sic*] [NCCI] was out of compliance" with non-discrimination policies, Rivers never filed a grievance against any Institutional Inspector (*id.* at 1).

An inmate's grievance must give "sufficient notice of the matter being grieved . . . ," so that "[p]rison officials . . . ha[ve] a chance to provide a remedy for the inmate and to decide whether the objectives of the review process have been served." *Maxwell v. Corr. Med. Servs., Inc.*, 538 F. App'x 682, 688 (6th Cir. 2013) (citing *Reed Bey*, 603 F.3d at 324). Rivers' purported allegation of racial discrimination, apparently hidden within the background of his actual allegation, did not give the Chief Inspector "sufficient notice" of the matter Rivers now argues he had been grieving.  Rivers did not initiate, let alone exhaust, administrative remedies for his equal protection claim. *Id.*; *Woodford*, 548 U.S. at 93.

In any event, as Defendants contend, Rivers' equal protection claim is moot (Doc. 77 at 2). When an inmate is transferred to another prison, his request for injunctive relief against the transferor prison, and its officials, becomes moot. *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010). Rivers was transferred from NCCI (Doc. 68 at ¶ 8), and he requests only injunctive relief against NCCI officials for his equal protection claim (Doc. 26 at 10).

**First Amendment Retaliation Claim**

Rivers also alleges Defendants put him in administrative segregation for complaining of racial discrimination (Doc. 26 at 1).  Defendants contend Rivers failed to exhaust this claim because he did not properly follow Ohio's Inmate Grievance Procedure (Doc. 65 at 1).

"The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).  In Ohio,

6

when an inmate files a grievance against a warden, the inmate "must show that the warden . . . was personally and knowingly involved in a violation of law, rule, or policy, or personally and knowingly approved or condoned such a violation." Ohio Admin. Code § 5120-9-31(M). Here, Rivers did not show Warden Turner's personal involvement or knowledge; he merely asserted "[he] was . . . put back in segregation without legal cause on 4/26/12 by . . . Warden Turner . . . in retaliation for using grievance procedure" (Doc. 68-1 at 1).

An inmate fails to exhaust administrative remedies when the Chief Inspector "clearly and expressly" dismisses the inmate's grievance "on procedural grounds." *Reynolds Bey*, 428 F. App'x at 502 (citing *Reed Bey*, 603 F.3d at 325). Here, the Chief Inspector "clearly and expressly" dismissed Rivers' grievance because of its procedural shortcomings: "[Rivers] failed to clearly indicate how Warden Turner was personally and knowingly involved in a violation of law, rule, or policy and approved it or did nothing to prevent it. Accordingly this grievance is DENIED" (Doc. 68-1 at 2). Rivers, therefore, failed to exhaust administrative remedies for his First Amendment retaliation claim.

Rivers resists this conclusion by arguing the Chief Inspector decided his grievance on the merits (Doc. 68-2 at 12). To support that argument, Rivers points to the second sentence of the Chief Inspector's response: "I find that you were placed in segregation at NCCI under investigation due to complaints from staff and inmates that you were acting inappropriately as NAACP president" (Doc. 68-1 at 2). In context, however, it is clear that statement is not a decision on the merits but merely a factual introduction. It is nowhere near the Chief Inspector's explicit decision to dismiss on procedural grounds in the closing paragraph.

Furthermore, that statement cannot be a decision on the merits because it does not decide anything. It is wholly consistent with both Rivers' allegation and Defendants' contention: The Chief

Inspector did not decide whether the complaints that led to Rivers' segregation were about Rivers speaking against racial discrimination, as Rivers alleges (Doc. 26 at ¶¶ 15–33), or if they were about Rivers intimidating other inmates and embezzling NAACP funds, as Defendants contend (Doc. 65 at 7). The crux of the matter is undecided. The Chief Inspector did not decide Rivers' grievance on the merits, and, consequently, Rivers failed to exhaust for his First Amendment claim. *See Reynolds Bey*, 428 F. App'x at 498; *Reed Bey*, 603 F.3d at 324.

### Availability of Administrative Remedies

Alternatively, Rivers argues "if [he] was required to utilize the 3-step process in grieving his claim of retaliatory segregation placement . . . against Defendant[ ] Turner . . . ," then ACI's Institutional Inspector rendered administrative remedies unavailable to him (Doc. 68-2 at 10). Administrative remedies are rendered unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1854 (2016). Rivers claims ACI's Institutional Inspector gave him "instruction[s] . . . direction[s] and a form . . . to file only one direct grievance . . ." (Doc. 68-2 at 9–10). But Rivers was entitled to use the one-step grievance procedure if he, in fact, had a grievance against the Warden. Ohio Admin. Code § 5120-9-31(M). The Institutional Inspector, therefore, did not thwart Rivers, but helped him (Doc. 68-2 at 9–10). The Inspector cannot be faulted for Rivers' subsequent failure to use that procedure properly by showing the Warden was personally involved.

In any event, as discussed, the Chief Inspector clearly alerted Rivers to the deficiencies in his grievance. At that point, Rivers either could have supplemented his one-step grievance with allegations showing the Warden's personal involvement, or used the three-step process against another official that was personally involved. He did neither. That is not the administrators' fault.

8

*See Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) ("[A]n inmate [must] make affirmative efforts to comply with the administrative procedures . . . .").

## CONCLUSION

The Motions for Partial Summary Judgment *Instanter* (Docs. 65, 77) are granted; Rivers' equal protection and First Amendment retaliation claims are dismissed. With no other federal claims remaining, this Court declines to exercise supplemental jurisdiction over Rivers' state law deprivation-of-property claim. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well."). Rivers' Motion for Appointment of Counsel (Doc. 79) is denied as moot.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

July 29, 2016